## APPEAL OF L. B. PUTNEY MERCANTILE CO.

Docket No. 3195. Submitted October 7, 1925. Decided February 17, 1926.

*Franklin C. Parks, Esq.,* for the taxpayer.
*George G. Witter, Esq.,* for the Commissioner.

Before STERNHAGEN and ARUNDELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1919 in the amount of $501.88. The deficiency arises from the refusal of the Commissioner to affiliate the taxpayer with the L. B. Putney, Inc., Albuquerque, N. Mex.

### FINDINGS OF FACT.

The taxpayer is an Arizona corporation, with its principal place of business at Holbrook. It has an authorized capital stock of $200,000. During the taxable year William Chamberlin held in his name stock in the taxpayer of the par value of $39,800, which constituted 49.8 per cent of the outstanding stock. Robert E. Putney owned all of the remaining shares outstanding during the period from January 1, 1919, to June 6, 1919, on which latter date he transferred his stock to L. B. Putney, Inc., a corporation organized on that date, which company continued to own said shares during the remainder of the taxable year.

From 1905 to June 6, 1919, Robert E. Putney, as an individual, operated a wholesale grocery business in Albuquerque, N. Mex., under the name of L. B. Putney. This business had been operated by his father prior to 1905. On June 6, 1919, a corporation was organized under the name of L. B. Putney, Inc. Putney owned 2,678 shares of the stock of this corporation, which constituted 89 per cent of its outstanding stock, and his two sons owned 159 shares each, the holdings of the two sons constituting 10 per cent of the outstanding stock.

In 1915 Putney established three branch stores, one at Holbrook, Ariz., one at Bernalillo, N. Mex., and one at Laguna, N. Mex. The business at Holbrook, Ariz., was incorporated in 1916 under the name of L. B. Putney Mercantile Co., the taxpayer herein. William Chamberlin was employed as the manager of the taxpayer company, and as an inducement to accept the position it was agreed that an opportunity should be afforded him to secure an interest in the company. An agreement was entered into in September, 1916, between Putney and Chamberlin, which recited that Cham-

berlin had purchased 39,800 shares of stock of the L. B. Putney Mercantile Co. for $39,800, and had "executed his promissory note, dated September ––, 1916, for the sum of thirty-nine thousand eight hundred dollars ($39,800), with interest at the rate of eight per cent (8%) per annum from date until paid, which said sum is the purchase price of said stock."

The agreement contained the further provisions:

It is expressly understood and agreed by and between the parties hereto that said note shall be payable only out of the net earnings and dividends drawn by said stock in the said L. B. Putney Mercantile Company, and not otherwise. That under no circumstances shall the indebtedness evidenced by said note become a lien upon, or a charge against any real or personal property of the party of the second part, other than the net earnings and dividends from the said stock in the L. B. Putney Mercantile Company.

It is also expressly understood and agreed that the said promissory note shall be non-negotiable, except with the consent of both parties hereto.

A stock certificate was made out in the name of William Chamberlin, under date of December 19, 1919, which certified that Chamberlin was the owner of 39,800 shares of stock in the taxpayer. This certificate was endorsed in blank by Chamberlin and left in the custody of Putney, who attached thereto the note given by Chamberlin in the amount of $39,800. On June 6, 1919, Putney transferred to L. B. Putney, Inc., the note given by Chamberlin, to which was attached the certificate of stock theretofore made out in the latter's name. L. B. Putney, Inc., entered the note on its books as a " Special notes receivable."

During the period of Putney's ownership of shares in the taxpayer company he furnished it with credit and stock in trade from the Albuquerque store as occasion demanded, and L. B. Putney, Inc., did likewise after it became a stockholder in the taxpayer. Chamberlin never voted the stock and, except at the time of its issue and endorsement, never had the certificate in his possession. It was understood that he would have no voice in shaping the policies of the corporation prior to the time that the stock was paid for. The taxpayer never paid dividends, and no part of the principal or interest was ever paid on the original note or on the renewal notes which were given from time to time.

In 1922 it was deemed advisable to dissolve the L. B. Putney Mercantile Co. Its property was transferred to L. B. Putney, Inc., the shares of stock in the taxpayer surrendered, and the note given by Chamberlin was returned to him.

L. B. Putney, Inc., acting through its principal stockholder, R. E. Putney, at all times during the taxable period dictated the business policy of the taxpayer and owned or controlled substantially all of its stock.

DECISION.

The taxpayer during the year 1919 was affiliated with L. B. Putney, Inc., and its tax liability should be computed on the basis of a consolidated return. The deficiency will be settled on 10 days' notice, under Rule 50.

---

APPEAL OF GEO. H. SALMON.

Docket No. 5733.   Submitted January 11, 1926.   Decided February 17, 1926.

Salary of nonresident alien *held* to be taxable only on such portion as was paid to him for services while he was in the United States.

*Geo. E. Kennedy, Esq.*, for the taxpayer.
*B. G. Simpich, Esq.*, for the Commissioner.

Before PHILLIPS and TRAMMELL.

Taxpayer appeals from the determination of a deficiency of $236 in income tax for 1922.

FINDINGS OF FACT.

Prior to February, 1916, the taxpayer, a citizen of Great Britain, was a resident of the Dominion of Canada. In February, 1916, taxpayer took up his residence in New York City and resided there with his wife and daughter until May, 1922.

In May, 1922, taxpayer was in the employ of the F. & E. Soter Corporation, which was engaged in manufacturing tobacco, and was vice president and one of the directors of that company. About that time this corporation proposed to acquire an interest in a factory manufacturing cigarettes in India. The taxpayer left the United States in May, 1922, for India for the purpose of examining this property. At that time he expected to return to the United States in about three or four months, after which he was to become connected with the New York City office of the taxpayer.

Upon his arrival in India the taxpayer found that the machinery in the factory was obsolete and not suitable for the manufacture of cigarettes. Negotiations for the purchase of the plant were delayed for several months, following which taxpayer remained in India for the purpose of installing new machinery in the plant, which machinery was purchased and shipped from the United States. Taxpayer did not return to the United States until May, 1924, after which date he took up his residence in Brooklyn, N. Y.